

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

WILLARD A. VAUGHN,

        Plaintiff,

v.

PATIENT FIRST, *et al.*,

        Defendants.

                                            **ACTION NO. 4:16cv39**

## ORDER

This matter is before the Court on (i) Defendants Patient First and Receivables Management Systems' ("RMS")[1] (collectively "Defendants") Motion to Dismiss, and (ii) Plaintiff Willard A. Vaughn's ("Plaintiff") Motion for Summary Judgment. Defs.' Mot. to Dismiss, ECF No. 6; Pl.'s Mot. for Summ. J., ECF No. 12. For the reasons set forth below, Defendants' Motion to Dismiss, ECF No. 6, is **GRANTED in part** and **DENIED in part**. Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's Health Insurance Portability and Accountability Act ("HIPAA") claims against Patient First and RMS; **GRANTED** as to Plaintiff's Emergency Medical Treatment and Labor Act ("EMTALA") claim against Patient First; **GRANTED** as to Plaintiff's Fair Credit Reporting Act ("FCRA") claim against RMS; **GRANTED** as to Plaintiff's negligence claim against Patient First based on the EMTALA;

---

[1] In their Motion to Dismiss, Defendants assert that "'Receivables Management Systems' is a registered fictitious name with the Virginia State Corporation Commission" and that "[t]he correct legal entity is 'Io, Inc., d/b/a Receivables Management Systems.'" Defs.' Mot. to Dismiss at 1, ECF No. 6. Defendants reference a "Motion for Substitution of Parties, filed contemporaneously with this Brief." *Id.* Defendants did not file a separate Motion for Substitution of Parties, as indicated. Nevertheless, the Clerk is **DIRECTED** to **SUBSTITUTE** "Io, Inc., d/b/a Receivables Management Systems" for "Receivables Management Systems" as the second named Defendant in this matter.

**DENIED** as to Plaintiff's HIPAA-related negligence claims against Patient First and RMS; and **DENIED** as to Plaintiff's negligence claims against RMS based on the FCRA and the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

## I. Factual and Procedural Background

Plaintiff, appearing *pro se*, initially filed his Complaint in the Circuit Court for the City of Hampton. Notice of Removal at 1, Ex. A, ECF No. 1. Defendants timely removed the case to this Court on May 26, 2016. *Id.* In his Complaint, Plaintiff alleges that Patient First erroneously billed him $243.40[2] for a medical appointment on April 28, 2015, that he did not attend. Compl. at 4. On November 11, 2015, Plaintiff attempted to visit Patient First for a "personal matter in need of urgent care," but Plaintiff was turned away due to his outstanding balance. *Id.* Patient First directed Plaintiff to go to an emergency room or MD Express, a competitor of Patient First that is operated by Riverside Health System. *Id.* Plaintiff claims that he was "personally opposed to using a facility operated by Riverside Health System," but felt that he "had no other choice." *Id.*

On December 16, 2015, Plaintiff made a payment to Patient First in the amount of $201.92. *Id.* at 5. Plaintiff claims that he "did not feel that [he] owed that amount;" however, he chose to pay so that he "would not have to attend a clinic owned by Riverside Health Systems, or another not covered by [his] insurance" in the future. *Id.* "On or around the same day," Plaintiff received information from his insurance company that caused him to believe that Patient First was no longer seeking payment for the April 28, 2015 unattended appointment. *Id.*

---

[2] Of this amount, Plaintiff alleges that he was charged $201.48 for a medical visit and $41.92 in fees and interest. Compl. at 4.

Accordingly, Plaintiff contacted his debit card provider and coordinated the issuance of a refund. *Id.*

In January of 2016, Plaintiff learned that "an account was placed on [his] credit report from RMS in the amount of $204." *Id.* at 6.  Plaintiff sent a letter to RMS and demanded that it "remove the account from [his] credit report;" however, RMS did not respond to Plaintiff's demand.  *Id.*  Plaintiff also sent letters to Patient First and RMS "denying that [he] was present on the date of service in question (April 28, 2015) and requesting any documentation that stated differently."  *Id.*  Plaintiff did not receive a written response from Patient First or RMS, but claims that he received a voicemail from a representative of Patient First who admitted that both Patient First and RMS were at fault for the mix-up and stated that there was a "mistaking of patients" with respect to the April 28, 2015 appointment.  *Id.*, Attach. 9.

Based on these facts, Plaintiff asserts several causes of action against Defendants.   First, Plaintiff asserts that Patient First's denial of treatment on November 11, 2015, due to an alleged outstanding balance, constituted a violation of the EMTALA.  *Id.* at 7.   Next, Plaintiff asserts that both Patient First and RMS violated his rights under HIPAA.   Specifically, Plaintiff claims that Patient First violated HIPAA "by sharing [his] personal identifying information with RMS when [Plaintiff] did not owe them any money" and that RMS violated HIPAA "by disclosing [his] identifying information with a third party, in this case being the credit reporting agencies." *Id.* at 7-8.   Plaintiff also asserts that RMS violated the FDCPA "by not notifying me in writing that they owned the debt and informing me as to how I could dispute the debt as specified in 15 U.S.C. 1692g."  *Id.* at 8.   Additionally, Plaintiff asserts that RMS violated the FCRA "by reporting that I owed a debt to the credit reporting agencies when I in fact did not."  *Id.* Finally, Plaintiff asserts state law negligence claims against Patient First and RMS based on their

3

alleged violations of the aforementioned federal statutes.  *Id.* at 8-9.  In total, Plaintiff seeks over $2 million from Defendants in compensatory and punitive damages.  *Id.*

Defendants filed a Motion to Dismiss on June 2, 2016, and provided Plaintiff with a proper *Roseboro* notice pursuant to Rule 7(K) of the Local Rules of the United States District Court for the Eastern District of Virginia.  Defs.' Mot. to Dismiss, ECF No. 6.  On June 9, 2016, Plaintiff filed an opposition to Defendants' Motion to Dismiss, as well as a Motion for Summary Judgment.[3]  Pl.'s Opp. Br., ECF No. 11; Pl.'s Mot. for Summ. J., ECF No. 12.  Each Defendant filed an opposition to Plaintiff's Motion for Summary Judgment.  Patient First's Opp. Br., ECF No. 15; RMS's Opp. Br., ECF No. 16.  Plaintiff filed a reply in support of his Motion for Summary Judgment, as well as a document titled, "Notice of Objection to 'Response in Opposition to Motion,'" which appears to the Court to be a surreply that was filed without leave of Court.[4]  Pl.'s Reply, ECF No. 17; Pl.'s Surreply, ECF No. 18.  Both motions are ripe for decision.

---

[3]  On June 9, 2016, Plaintiff filed a document titled, "Statement in Opposition Regarding Motion to Dismiss and Motion for Summary Judgment."  Recognizing the dual purpose of Plaintiff's submission, the Clerk docketed a duplicate copy of this document to serve as Plaintiff's Motion for Summary Judgment. *See* ECF Nos. 11-12.  On the same day, Plaintiff also filed a document titled, "Brief in Support of Motion for Summary Judgment."  Plaintiff characterizes his "Brief in Support of Motion for Summary Judgment" as a response to Defendants' Motion to Dismiss. *See* Pl.'s Br. in Supp. of Mot. for Summ. J. at 1, ECF No. 13.  In deference to Plaintiff's *pro se* status, the Court will consider all of Plaintiff's June 9, 2016 filings in its analysis of Defendants' Motion to Dismiss.

[4]  Rule 7(F)(1) of the Local Civil Rules of the United States District Court for the Eastern District of Virginia explains that when a motion is filed, the opposing party has eleven days to file a responsive brief.  The moving party then has three days to file a rebuttal brief.  "No further briefs or written communications may be filed without first obtaining leave of Court."  E.D. Va. Loc. Civ. R. 7(F)(1).

## II. Defendants' Motion to Dismiss

### A. Standard of Review

Defendants Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to "allege facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As such, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Johnson*, 682 F. Supp. 2d at 567.

### B. Analysis

As noted above, Plaintiff asserts several causes of action against Patient First and RMS. In their Motion to Dismiss, Defendants seek dismissal of all claims *except* the FDCPA claim against RMS.

#### i. HIPAA Claims Against Patient First and RMS

Defendants argue that Plaintiff's HIPAA claims must be dismissed because HIPAA does not provide for a private cause action. Defs.' Memo. in Supp. of Mot. to Dismiss at 3, ECF No. 7. This Court agrees. Although "[t]he Fourth Circuit has yet to consider whether HIPAA creates a private cause of action . . . , the weight of authority in the Fourth Circuit . . . holds that HIPAA does not provide for a private right of action." *Brown v. Miller*, No. 1:13cv3, 2016 U.S. Dist. LEXIS 11873, at * 17 (N.D. W. Va. Feb. 2, 2016). *See also Caravetta v. Marefat*, No. 1:13cv1064, 2013 U.S. Dist. LEXIS 166628, at *11-12 (E.D. Va. Nov. 22, 2013)

(dismissing a HIPAA claim due to the lack of a private cause of action and noting that the Secretary of Health and Human Services, not a private litigant, is charged with enforcing the statutory provisions of HIPAA).[5]   Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's HIPAA claims against Patient First and RMS.

ii.   <u>EMTALA Claim Against Patient First</u>

Plaintiff claims that Patient First violated EMTALA when it denied him treatment on November 11, 2015, due to his outstanding balance.  Compl. at 7.  "EMTALA is designed to require hospitals to treat patients with emergency medical conditions by requiring hospitals to provide all patients with a basic evaluation to determine whether the patient has a serious or life threatening condition."  *Baber v. Hospital Corp. of America*, 977 F.2d 872, 884-85 (4th Cir. 1992).  EMTALA states, in pertinent part:

> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a).  This provision applies only to a "hospital" that has a "dedicated emergency department."  42 C.F.R. § 489.24(b).  Both "hospital" and "dedicated emergency department" are defined terms.  "Hospital" is defined as an institution which, among other things, "is primarily engaged in providing, by or under the supervision of physicians, **to**

---

[5]  Plaintiff appears to concede that HIPAA does not provide him with a cause of action. Pl.'s Memo. in Supp. of Mot. for Summ. J. at 3, ECF No. 13 (noting that "it may be so that a private claim of action cannot happen under HIPAA regulations").  Instead, as discussed more fully below, Plaintiff seeks to use the HIPAA regulations as the standard of care for his negligence claims against Defendants.

inpatients (A) diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons." 42 U.S.C. § 1395x(e) (emphasis added). *See also Rodriguez v. Am. Int'l Ins. Co.*, 402 F.3d 45, 48 (1st Cir. 2005) (noting that the EMTALA incorporates the definition of "hospital" set forth in 42 U.S.C. § 1395x); *Byrne v. Cleveland Clinic*, No. 09-889, 2011 U.S. Dist. LEXIS 34993, at *6 (E.D. Pa. Mar. 31, 2011) (same).

A "dedicated emergency department" is defined as:

> any department or facility of the hospital, regardless of whether it is located on or off the main hospital campus, that meets at least one of the following requirements:
>
> (1) It is licensed by the State in which it is located under applicable State law as an emergency room or emergency department;
>
> (2) It is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment; or
>
> (3) During the calendar year immediately preceding the calendar year in which a determination under this section is being made, based on a representative sample of patient visits that occurred during that calendar year, it provides at least one-third of all of its outpatient visits for the treatment of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment.

42 C.F.R. § 489.24(b).

Here, Patient First argues that Plaintiff "has not alleged sufficient facts to indicate Patient First is a facility within the ambit of EMTALA." Defs.' Memo. in Supp. of Mot. to Dismiss at 5, ECF No. 7. This Court agrees. Plaintiff does not allege sufficient facts to establish that

7

Patient First has a "dedicated emergency department," as defined by 42 C.F.R. § 489.24(b).[6] Further, as Patient First notes, Plaintiff characterizes Patient First as an "outpatient hospital." Compl. at 7.   The EMTALA applies only to a "hospital" that is primarily involved in providing services to inpatients, not outpatients.   42 U.S.C. § 1395x(e).   Plaintiff does not allege – nor does it appear to the Court that he could truthfully allege – that Patient First is primarily involved in providing services to inpatients.   Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's EMTALA claim against Patient First.

iii.   FCRA Claim Against RMS

Plaintiff claims that RMS violated the FCRA "by reporting that [he] owed a debt to the credit reporting agencies when [he] in fact did not."   Compl. at 8.   "Under § 1681s-2(a), [the] FCRA prohibits any person from furnishing information to a [consumer reporting agency] that the person knows is inaccurate."   *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008).   Further, § 1681s-2(a)(2) requires "any person who 'regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies' [to] . . . correct and update the information provided so that it is 'complete and accurate.'"   *Id.* However, the "FCRA explicitly bars private suits for violations of § 1681s-2(a)."   *Id.* at 149. *See also Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 933 (E.D. Va. 2012) (noting that "[n]o private cause of action exists pursuant to subsections of FCRA other than subsection (b)").

---

[6]   Plaintiff attached records to his Complaint that indicate that, from January 1, 2015 to December 31, 2015, there were 147 "medical calls" that resulted in an ambulance being dispatched to Patient First and an individual being transported to a local hospital.   Compl., Attach. 10.   To the extent Plaintiff seeks to use this information to establish the applicability of the third definition of "dedicated emergency department" under 42 C.F.R. § 489.24(b), the Court finds that the information is insufficient to do so.

The FCRA does provide a cause of action for claims brought pursuant to § 1681s-2(b). *Saunders*, 526 F.3d at 149. Section 1681s-2(b) imposes certain investigatory obligations on a furnisher of information if it is notified by a consumer reporting agency that there is a dispute regarding the completeness or accuracy of any information provided by the furnisher. 15 U.S.C. § 1681s-2(b). Once a furnisher receives notice from a consumer reporting agency, the furnisher must, for example, investigate the disputed information, review all relevant information, report its investigation results, and make any modifications, as appropriate. *Id.* "A furnisher, however, cannot be liable under section 1681s-2, unless it has received notice from a credit reporting agency that a consumer disputes the information reported." *Tieffert v. Equifax Info. Servs., LLC*, No. 3:14cv609, 2014 U.S. Dist. LEXIS 175546, at * 8-9 (E.D. Va. Dec. 19, 2014). *See also Taylor*, 841 F. Supp. 2d at 933 (noting that the "creditor's receipt of a notice from a credit reporting agency is the event that triggers Defendant's obligation to investigate" under § 1681s-2(b)).

Although Plaintiff does not identify the particular subsection of the FCRA that he contends was violated by RMS, his factual allegations are focused exclusively on the alleged reporting of inaccurate information. Compl. at 8-9 (alleging that "RMS violated the FCRA by reporting that I owed a debt to the credit reporting agencies when I in fact did not" and seeking compensation "for each time [RMS] reported and certified their report to the credit reporting agencies"). As such, the Court determines that Plaintiff's FCRA claim against RMS is brought pursuant to § 1681s-2(a), for which there exists no private cause of action.[7] Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's FCRA claim against RMS.

---

[7] Plaintiff provides no factual allegations to suggest that RMS received a notification of disputed information from a consumer reporting agency, or that RMS failed to properly investigate

### iv.   Negligence Claims Against Patient First and RMS

In his Complaint, Plaintiff appears to assert state law negligence claims against both Patient First and RMS based on their alleged failure to comply with the duties of care set forth in the various federal statutes discussed above.   To state a negligence claim under Virginia law, Plaintiff must allege that (i) Defendants owed him a legal duty; (ii) Defendants breached that legal duty; (iii) Plaintiff suffered damages; and (iv) the damages were proximately caused by Defendants' actions.   *Federico v. Lincoln Military Hous.*, LLC, 127 F. Supp. 3d 623, 641 (E.D. Va. 2015) (citing *McGuire v. Hodges*, 273 Va. 199, 639 S.E.2d 284 (Va. 2007)).

### a.   EMTALA-Related Negligence Claim Against Patient First

Plaintiff alleges that, due to Patient First's "negligence" in refusing him service on November 11, 2015, Plaintiff suffered damages.   Compl. at 9.   This appears to be a state law negligence claim against Patient First based on the obligations imposed by the EMTALA. However, as noted above, Plaintiff has not sufficiently alleged that Patient First, an outpatient facility, is covered by the EMTALA.   Without factual allegations sufficient to show that Patient First is bound by the legal duties imposed by the EMTALA, Plaintiff cannot state a negligence claim against Patient First based on its alleged refusal of service on November 11, 2015. Accordingly, Defendant's Motion to Dismiss Plaintiff's negligence claim against Patient First based on the EMTALA is **GRANTED**.

---

after receiving such notice.   Accordingly, to the extent Plaintiff intended to state a claim under § 1681s-2(b), he has failed to do so.

### b. HIPAA-Related Negligence Claims Against Patient First and RMS

Plaintiff's Complaint, construed liberally, asserts negligence claims against Patient First and RMS based on alleged violations of HIPAA.[8] Compl. 3-9. Patient First and RMS argue that such claims should be dismissed because (i) HIPAA does not provide a private cause of action, and (ii) any disclosed information regarding the April 28, 2015 appointment, which Plaintiff did not attend, would have been another patient's health information. Defs.' Memo. in Supp. of Mot. to Dismiss at 7, ECF No. 7. The Court determines that Defendants' arguments are insufficient to warrant dismissal of this claim.

First, while it is true that HIPAA does not provide a private cause of action, Defendants have not addressed whether Virginia would recognize a negligence claim based on a violation of HIPAA. Several courts have allowed HIPAA regulations to serve as the standard of care in state law negligence claims. *See I.S. v. Wash. Univ.*, No. 4:11cv235, 2011 U.S. Dist. LEXIS 66043, at *5 (E.D. Mo., June 14, 2011) (finding that a negligence claim may stand "despite its exclusive reliance upon HIPAA"); *Acosta v. Byrum*, 180 N.C. App. 562, 571-72 638 S.E.2d 246, 253 (N.C. Ct. App. 2006) (allowing a negligence claim that cited to HIPAA for the standard of care to move forward); *Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*, 314 Conn. 433, 454-55, 102 A.3d 32, 46-47 (Conn. 2014) (recognizing that several courts "have determined that HIPAA may inform the relevant standard of care" in state court claims regarding patient confidentiality). Therefore, the fact that HIPAA does not provide a private a cause of action,

---

[8] Plaintiff's Complaint includes references to the "negligence" of both Patient First and RMS, and asserts that both Patient First and RMS violated provisions of HIPAA. Compl. at 7-9. Additionally, in opposing Defendants' Motion to Dismiss, Plaintiff asserted that: "My complaint in context and in spirit, asserts negligence on the part of Patient First in releasing my information to [RMS] and causing harm while doing so." Pl.'s Br. in Supp. of Mot. for Summ. J. at 3, ECF No. 13.

standing alone, does not necessarily require dismissal of a HIPAA-related negligence claim under Virginia law.

Defendants also argue that Plaintiff's HIPAA-related negligence claim must be dismissed because the disclosed information at issue must have belonged to another patient.   Defs.' Memo in Supp. of Mot. to Dismiss at 7, ECF No. 7.   Defendants' argument is logical, as Plaintiff's claim is based on the transmission of information for a medical appointment Plaintiff never attended.   However, the Court must, for purposes of a Motion to Dismiss, accept Plaintiff's factual allegations as true, and Plaintiff alleges that both Patient First and RMS improperly disclosed *his* "personal identifying information."   Compl. at 7-8.   Because the Court is not persuaded by Defendants' arguments, Defendants' Motion to Dismiss Plaintiff's HIPAA-related negligence claims against Patient First and RMS is **DENIED.**

c.   <u>FCRA-Related Negligence Claim Against RMS</u>

RMS argues that Plaintiff cannot state a negligence claim against it based on alleged violations of the FCRA because the "FCRA does not provide a private right of action for [a] violation of 15 U.S.C. § 1681s-2(a), and plaintiff has not pleaded sufficient facts to state a claim under § 1681s-2(b)."   Defs.' Memo. in Supp. of Mot. to Dismiss at 8, ECF No. 7.

Despite Defendants' arguments, this Court and others have allowed FCRA-related state law claims to proceed beyond the pleadings stage.   For example, in *Hazaimeh v. United States Bank Nat'l Ass'n*, 94 F. Supp. 3d 741 (E.D. Va. 2015), the plaintiffs claimed that the defendants "wrongfully reported to credit bureaus that there had been a valid foreclosure" on a residence. *Id.* at 752.   The defendants argued that the plaintiff's FCRA-related state law claims of fraud and breach of the implied covenant of good faith were preempted by the FCRA and should be dismissed.   *Id.*   After determining that the FCRA did not preempt the plaintiffs' claims, this

Court denied the defendants' motion to dismiss. *Id.* at 752-53.   Similarly, in *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2012 U.S. Dist. LEXIS 158508 (E.D. Va. Nov. 5, 2012), this Court denied a defendant's motion to dismiss a plaintiff's FCRA-related defamation claim that was based on an "alleged reporting of inaccurate information about [the plaintiff] to consumer reporting agencies." *Id.* at *16-24.   *See also Jackson v. Ocwen Loan Servicing*, No. 3:15cv238, 2016 U.S. Dist. LEXIS 44367, at *11, 27-32 (E.D. Va. Mar. 31, 2016) (denying a motion to dismiss an FCRA-related breach of contract claim based on alleged improper reporting to credit reporting agencies); *Evans v. Trans Union LLC*, No. 2:10cv945, 2011 U.S. Dist. LEXIS 14724, at *18-23 (S.D. W. Va. Feb. 14, 2011) (denying a motion to dismiss an FCRA-related negligence claim based on the reporting of allegedly inaccurate information).

Further, the Court notes that Plaintiff's FCRA-related negligence claim against RMS is not preempted by the FCRA.   Section 1681h(e) of the FCRA contains a provision that preempts certain state common law claims.   It states:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615 [15 USCS § 1681g, 1681h, or 1681m], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).   Here, the information that Plaintiff alleges was negligently disclosed by RMS does not fall into any of the categories that trigger preemption under § 1681h(e).   "Sections 1681g and 1681h apply only to disclosures made by [consumer reporting agencies]" and "Section 1681m applies only to users of consumer reports." *Bourdelais,* 2012 U.S. Dist. LEXIS 158508,

13

at *23-24.  RMS is not a consumer reporting agency or a user of Plaintiff's consumer report, and did not take adverse action against Plaintiff based on his report.  As such, Plaintiff's FCRA-related negligence claim against RMS avoids preemption under § 1681(h)(e).

Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's FCRA-related negligence claim against RMS.

### d.  FDCPA-Related Negligence Claim Against RMS

RMS also argues that Plaintiff cannot state a negligence claim against it based on alleged violations of the FDCPA because the FDCPA "prescribes the only penalties that are available for its violation" and "Virginia does not have a fair debt collection practices statute or any common law duty" that would support his claim.  Defs.' Memo. in Supp. of Mot. to Dismiss at 8, ECF No. 7.  Contrary to RMS's first argument, "[s]everal courts have concluded that the FDCPA does not preempt state law tort claims for negligence."  *Desmond v. Phillips & Cohen Assocs.*, 724 F. Supp. 2d 562, 567-68 (W.D. Pa. 2010) (citing *Heidelberger v. Am. Express Travel Related Serv. Co.*, No. 2:07cv141, 2007 U.S. Dist. LEXIS 95728, at *7-8 (E.D. Ark. Dec. 13, 2007); *Colo. Capital v. Owens*, 227 F.R.D. 181, 191 (E.D.N.Y. 2005); *Virgil v. Reorganized M.W. Co.*, 156 F. Supp. 2d at 624, 629-31 (S.D. Miss. 2001)).  Accordingly, the Court is not convinced that the FDCPA "prescribes the only penalties that are available for its violation."

With respect to RMS's second argument, the Court notes that neither RMS nor Plaintiff cited any authority specifically addressing whether a negligence claim based on a violation of the FDCPA is viable in Virginia.  In *Webb v. Green Tree Servicing, LLC*, No. ELH-11-2105, 2012 U.S. Dist. LEXIS 79451, at *17-22 (D. Md. June 7, 2012), the Court was faced with a strikingly similar scenario whereby a *pro se* plaintiff asserted a claim under the FDCPA, as well as a negligence claim based on a violation of the FDCPA.  *Id.* at *6-22.  The plaintiff's FDCPA

14

claim could not be resolved at the pleading stage. As for the plaintiff's related negligence claim, the Court explained:

> Neither party has cited any authority specifically addressing whether a negligence claim based on [a] violation of the FDCPA is viable in Maryland. Ordinarily, such a claim would be redundant if, as here, the plaintiff has also asserted a claim arising directly under the FDCPA. Because the negligence claim would not expand the scope of discovery, however, there is no occasion to resolve the viability of an FDCPA-based negligence claim at the pleading stage, especially in the absence of authority or analysis from the parties.

*Id.* at *21-22. Here, as in *Webb*, Plaintiff's FDCPA claim will not be resolved at the pleading stage and, as such, Plaintiff's FDCPA-based negligence claim will not expand the scope of discovery in this matter. Further, there is insufficient "authority or analysis from the parties" regarding the viability of a FDCPA-based negligence claim in Virginia. *Id.* For these reasons, Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's FDCPA-related negligence claim against RMS.[9]

### III. Plaintiff's Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact" and that judgment, as a matter of law, is warranted. Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). To support the assertion that a fact cannot be genuinely disputed, the moving party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

---

[9] The Court notes that this outcome also comports with the notion that "[p]ro se litigants are entitled to some deference from courts." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989).

15

materials." Fed. R. Civ. P. 56(c)(1).   Additionally, Rule 56(B) of the Local Civil Rules for the

Eastern District of Virginia requires a party moving for summary judgment to "include a

specifically captioned section listing all material facts as to which the moving party contends there

is no genuine issue" and cite "the parts of the record relied on to support the listed facts as alleged

to be undisputed."   E.D. Va. Loc. R. 56(B).

As Defendants note in their opposition briefs, Plaintiff's Motion for Summary Judgment

does not comply with the requirements of Rule 56 of the Federal Rules of Civil Procedure.

Patient First's Opp. Br. at 1-3, ECF No. 15; RMS's Opp. Br. at 1-3, ECF No. 16.   Defendants

further note, and the Court agrees, that Plaintiff's Motion for Summary Judgment is more akin to

an opposition to Defendants' Motion to Dismiss.   *Id.*   Additionally, Plaintiff's Motion for

Summary Judgment fails to comply with the requirements of Local Rule 56(B) of the Local Civil

Rules for the Eastern District of Virginia.   For these reasons alone, denial of Plaintiff's motion is

warranted.   *Certusview Techs., LLC v. S&N Locating Servs.*, No. 2:13cv346, 2015 U.S. Dist.

LEXIS 103982, at *14-17 (E.D. Va. Aug. 7, 2015) (denying a plaintiff's motion for summary

judgment for failure to comply with Local Rule 56(B)).   Denial is also warranted because

Plaintiff's motion does not sufficiently establish that there is no genuine dispute as to any

material fact.   *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322; *Seabulk Offshore, Ltd.*,

377 F.3d at 418.   For these reasons, Plaintiff's Motion for Summary Judgment, ECF No. 12, is

**DENIED.**

## IV.   Conclusion

For the reasons set forth above, the Clerk is **DIRECTED** to **SUBSTITUTE** "Io, Inc.,

d/b/a Receivables Management Systems" for "Receivables Management Systems" as the second

named Defendant in this matter.   Further, Defendants' Motion to Dismiss, ECF No. 6, is

**GRANTED in part** and **DENIED in part**.   Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's HIPAA claims against Patient First and RMS; **GRANTED** as to Plaintiff's EMTALA claim against Patient First; **GRANTED** as to Plaintiff's FCRA claim against RMS; **GRANTED** as to Plaintiff's negligence claim against Patient First based on the EMTALA; **DENIED** as to Plaintiff's HIPAA-related negligence claims against Patient First and RMS; and **DENIED** as to Plaintiff's negligence claims against RMS based on the FCRA and the FDCPA. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

_____ /s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

August _10_ , 2016

17